IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Alana Hillen | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 17 C 2074 |
| | ) |
| Blistex, Inc., | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM OPINION AND ORDER

On behalf of herself and a putative class, plaintiff sues Blistex, the maker of various lip ointments and balms, alleging that the company has defrauded consumers and unjustly enriched itself by packaging one of its products—Medicated Lip Ointment—in a dispenser that does not effectively dispense all of the product it contains. Blistex moves to dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(6). I grant the motion for the following reasons.

I.

According to the complaint, whose allegations I take as true for present purposes, *see Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014), Medicated Lip Ointment is a product designed "to heal chapped lips" and "to smooth lip texture before applying color." Cmplt. at ¶ 11.

Plaintiff's claims focus on the "uniquely designed" shape of the tube from which the product is dispensed. According to plaintiff's description of the tube and the photographs she includes in her complaint, the ointment is "held within a flexible tube, much like a miniature tube of toothpaste," and is dispensed through the tube's hollow, opaque, hard plastic tip whose slanted face "can then be used to spread the Lip Ointment to the desired area." *Id*. at ¶¶ 13-14 and Table 2 (photographs). Plaintiff alleges that when used as intended, nearly a quarter of the product remains "trapped" in the plastic tip, which consumers unwittingly discard in the mistaken belief that they have used the tube's entire contents. *Id*. at ¶ 18. Moreover, even consumers who know or suspect there is ointment trapped in the tip and cut the tube open to remove it are unable to use all of the remainder because, among other problems, opening the tube in this fashion "ruins" the ointment by exposing it to air. *Id*. at ¶ 19. Plaintiff states that alternative designs defendant uses in foreign markets are superior and do not suffer from the defect she describes. *Id*. at ¶ 22. She asserts claims under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq. ("ICFA"), the common law of fraud, and the theory of unjust enrichment.

Defendant articulates a myriad of flaws in plaintiff's complaint and theories of liability: that she lacks standing

because she has suffered no injury-in-fact; that her ICFA claim is barred by the statute's safe harbor provisions; that Blistex's tube design is not deceptive or misleading as a matter of law; that the omissions plaintiff alleges do not give rise to liability absent a fiduciary relationship between the parties, which plaintiff does not and cannot allege; and that plaintiff's unjust enrichment claim fails both because it is based on the same deficient allegations of deceptive conduct as her fraud-based claims and because no claim for unjust enrichment lies where a consumer receives "exactly what she paid for," as is the case here.

II.

Standing to sue is a threshold jurisdictional question, so I begin there. To establish Article III standing, plaintiff must show that she "has suffered a concrete and particularized injury" that is both traceable to defendant's conduct and likely to be redressed by a favorable judicial decision. *Remijas v. Neiman Marcus Group, LLC*, 794 F.3d 688, 691-92 (7th Cir. 2015) (citation omitted). As I have observed in the past, "[t]here is a subtle but important distinction between (1) whether an injury gives a litigant standing and (2) whether the same injury gives rise to a legal claim upon which relief may be granted." *Moyer v. Michaels Stores, Inc.*, No. 17 C 561, 2014 WL 3511500, at *3 (N.D. Ill. July 14, 2014). "[W]hile a litigant need not

3

definitively establish that a right of his has been infringed, he must have a colorable claim to such a right to satisfy Article III." *Id.* (quoting *Bond v. Utreras*, 585 F.3d 1061, 1073 (7th Cir. 2009) (internal quotation marks and citation omitted) (alteration in *Moyer*)).

Defendant's standing argument likens this case to *Eike v. Allergan, Inc.*, 850 F.3d 315 (7th Cir. 2017), in which the Seventh Circuit held that consumers of eye drops used to treat glaucoma lacked standing to assert an ICFA claim that the defendants' drops were "unnecessarily large," causing consumers to pay more than necessary for the products. *Id.* at 317. The *Eike* plaintiffs alleged that the defendants' needlessly large drops caused them to "run out of medicine before they should, and have to buy additional bottles at great expense," increasing the defendants' "unfair and unethical profits." *Eike* Cmplt., Exh A to Def.'s Mot., at ¶ 10.[1] This is indeed similar to plaintiff's allegation that defendant's tube design caused her to "purchase additional tubes of the Lip Ointment[,] increasing Blistex's annual sales and profits." Cmplt. at ¶ 32. But while the similarity in these allegations is superficially striking, the court's analysis in *Eike* reveals a distinct theory of injury from the one asserted here.

---

[1] As a matter of public record, I may take judicial notice of the contents of the pleadings in *Eike*. *U.S. v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991).

4

In *Eike*, the court considered and rejected the plaintiffs' argument that "the price of the eye drops is excessive because a smaller drop, costing less to produce and (especially) to package, could be sold at a lower price yet still cover the producers' costs, and therefore the only benefit of the larger drop is to the producers' profits." *Id*. at 316. The court explained that this theory "assumes that profits would decline if the defendants switched to selling the smaller, cheaper-to-produce eye drops. But that's far from certain; lower prices might result in greater sales and as a result higher rather than lower profits." *Id*. at 316-317. Noting that the complaint lacked any allegations of price collusion or misrepresentation, the court construed the plaintiffs' claim as resting solely on their "dissatisfaction with a product made by multiple firms, or with its price." That injury, the court explained, was not actionable:

> You cannot sue a company and argue only—"it could do better by us"—which is all they are arguing. In fact, such a suit fails at the threshold, because there is no standing to sue. One cannot bring a suit in federal court without pleading that one has been injured in some way (physically, financially—whatever) by the defendant. That's what's required for standing. The fact that a seller does not sell the product that you want, or at the price you'd like to pay, is not an actionable injury; it is just a regret or disappointment—which is all we have here, the class having failed to allege "an invasion of a legally protected interest."

*Id*. at 318.

5

Unlike the plaintiffs in *Eike*, plaintiff does not argue that defendant could have, but elected not to, reduce its production costs and pass its savings on to consumers through a lower sale price. In fact, her complaint is not that the price of Medicated Lip Ointment is too high, but rather that it is "artificially low because the amount of Lip Ointment listed on the label includes the portion of unusable Lip Ointment." Cmplt. at ¶ 30. Accordingly, the injury she asserts results not from defendant's inflated pricing but instead from defendant's deceptively wasteful packaging, which causes her to purchase more of the product—and thus to spend more of her money—than she would if another tube design were used. That financial injury is distinct from the one the court found wanting in *Eike* and is sufficient to establish standing. *See In re Aqua Dots Products Liability Litigation*, 654 F.3d 748, 751 (7th Cir. 2011) (allegation that consumers paid more for product than they would if they had known of its defect sufficient to establish standing).

Where plaintiff's claims fall short, however, is in their substance. To state a claim under the ICFA, plaintiff must allege "(1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the

6

plaintiff (5) proximately caused by the deception." *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 850 (Ill. 2005) (citation omitted). Common law fraud requires, in addition, that plaintiff allege that she relied on defendant's deception, and that defendant acted with scienter. *Ibarrola v. Kind*, LLC, 83 F. Supp. 3d 751, 756 (N.D. Ill. 2015).

Plaintiff's fraud claims fail for at least the reason that her complaint does not plausibly allege deception. Plaintiff does not contend that the tubes of Medicated Lip Ointment she purchased contained less of the product than the net weight stated on the label. Nor does she claim to have been surprised by the shape of the tube, which indeed is pictured on the packaging. The alleged deception, in plaintiff's view, is that the dispenser's hard plastic tip "appears to be solid, even though it is hollow." Cmplt. at ¶ 17. *See also id*. at ¶¶ 13, 15. This allegation defies common sense. If the tip of the tube were solid, how would the product travel through it to reach the user's lips? No reasonable consumer would expect a completely solid tip.

Even, however, if plaintiff's allegations about the solid tip are construed as alleging a deceptively cavernous tip, they come no closer to stating an ICFA or a common law fraud claim. Plaintiff tacitly concedes that consumers expect *some* amount of product to remain in the tube. *See* Resp. at 2, 3, 7, 10, and 11

7

(arguing that consumers expect to use "nearly all" of the product and complaining that defendant's design causes "significant" waste). Indeed, as other courts have observed, consumers are generally aware that they may not be able to extract every bit of common products such as "toothpaste, peanut butter, shampoo, and many other products" from their packaging. *Hawkins v. UGI Corp*., No. CV 14-08461, 2016 WL 2595990, at *3 (C.D. Cal. May 4, 2016). Put simply, plaintiff's disappointment in defendant's tube design does not establish deception, nor does it transform defendant's accurate labeling of the product's net weight into fraud by omission. *See Ebner v. Fresh, Inc*., 838 F.3d 958, 966 (9th Cir. 2016) (no deception where net weight of lip balm in dispensing tube was accurately stated on label, even though a "plastic stop device" prevented 25% of the product from "advancing past the tube opening"); *Hawkins*, 2016 WL 2595990, at *3 (C.D. Cal. May 4, 2016) (dismissing claims alleging propane cylinders were deceptively labeled because the "usable quantity" of propane in the cylinders was less than the stated fifteen pounds).

Plaintiff's efforts to distinguish *Ebner* and *Hawkins* on their facts are unpersuasive. For example, plaintiff argues that *Ebner* is distinguishable because the product at issue was "cosmetic" rather than medicinal, and because the shape of the lip balm dispenser in *Ebner* allowed consumers to see the

8

remaining product stuck in the tube, while the dispenser here allegedly "conceals the trapped product, preventing consumers from discovering it." Resp. at 12; Cmplt. at ¶ 17. But plaintiff articulates no reasoned basis for distinguishing between cosmetic products and medicinal ones, and, as noted above, she concedes that reasonable consumers expect some product to remain in the dispenser and could extract the remains by cutting open the tube. Accordingly, just as in *Ebner*, consumers of Medicated Lip Ointment can "decide whether it [is] worth the effort to extract any remaining product with a finger or a small tool." 838 F.3d at 966. That plaintiff views that solution as "messy," "inconvenient," or otherwise undesirable does not render defendant's tube design unfair or deceptive. In short, like the courts in *Ebner* and *Hawkins*, I conclude that plaintiff has not alleged a plausible claim that defendant's packaging was deceptive or misleading.

None of plaintiff's cited cases, which she cites for the proposition that true but misleading statements can be fraudulent, is to the contrary. *See Neptuno Treuhand-UND Verwaltungsgesellschaft MBH v. Arbor*, 692 N.E. 2d 812, 817 (Ill. App. Ct. 1998) (affirming dismissal of fraudulent concealment claim on the ground that speaker had no fiduciary duty to disclose truth); *St. Joseph Hospital v. Corbetta Constr. Co., Inc.*, 316 N.E. 2d 51, 70 (Ill. App. 1974) (affirming judgment

against manufacturer of "highly inflammable and dangerous" product the manufacturer described truthfully as "not flame rated" and sold for use in hospitals, despite its actual knowledge that the product was "utterly unfit for use in such an institution"); *In re McCormick & Co., Inc. Pepper Prod. Mktg. and Sales Practice Litig.*, No. MC 15-8825, 2016 WL 6078250 at *6 (D.D.C. Oct. 17, 2016) (denying motion to dismiss complaint alleging that competitor's practice of "slack filling" containers with empty space violated Lanham Act). These cases simply do not support plaintiff's claims on the facts alleged.

Plaintiff's failure to plead any actionable deception eviscerates not only her fraud claims but her unjust enrichment claim as well. *See Ibarrola*, 83 F. Supp. 3d at 760-61 ("Absent a plausible allegation of deception, the claim for unjust enrichment must fail") (citing *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 515 (7th Cir. 2006), and *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 943 (7th Cir. 2001)). At all events, I agree with defendant that because it sells "all of the ointment it claims to be," it was not unjustly enriched by plaintiff's purchases of the product. *See Ebner v. Fresh Inc.*, No 13-00477, 2013 WL 9760035, at *8 (C.D. Cal Sept. 11, 2013) ("this is not a case where the manufacturer short weights the amount of product, and thus profits. Here, the manufacturer supplies the amount of product stated, and whatever difficulty there is in extracting

100 percent of the product, it does not redound to the benefit of the manufacturer.").

### III.

Because the foregoing grounds support dismissal of plaintiff's complaint under Fed. R. 12(b)(6), I need not reach defendant's remaining arguments. The complaint is dismissed in its entirety.

**ENTER ORDER:**

**Elaine E. Bucklo**
United States District Judge

Dated: July 5, 2017